```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

DONALD R. BAILEY et al.            :
                                   :
V.                                 :    Civil No. WMN-06-01037
                                   :
PATIENT FIRST CORPORATION et al.   :

### MEMORANDUM

Before the Court is Defendants' motion to dismiss.  Paper No. 3.  The motion is fully briefed.  Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that Defendants' motion will be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This medical malpractice case arises from the Defendants' allegedly negligent failure to appropriately diagnose and treat Virginia D. Bailey, which resulted in her death.  Plaintiffs commenced this action on April 25, 2006, bringing a wrongful death claim (Count I) as well as a survival action (Count II).  At issue in the pending motion is whether the Court has proper subject matter jurisdiction over the action.

Plaintiffs Donald R. Bailey and Nia Simone Bailey, the decedent's surviving spouse and surviving minor daughter, are citizens of Maryland.  Plaintiffs Cleveland and Alma Doleman, the decedent's surviving parents, are citizens of Alabama. Plaintiffs allege that the defendant corporate entities - Patient First Corporation, Patient First of Maryland, Inc., Patient First Maryland Physicians Group, P.C., and Patient First Medical Services Corporation - are all duly incorporated under the laws

of the Commonwealth of Virginia, maintain their principal places of business in Virginia, conduct the bulk of their corporate activity in Virginia, and are otherwise citizens of Virginia.  On this basis, Plaintiffs contend that complete diversity exists between the parties and that the Court has subject matter jurisdiction over their claims.

Defendants contend that Plaintiffs' Complaint fails to provide details as to the nature of the business performed by each defendant corporation and that Defendants Patient First of Maryland, Inc. (Patient First MD) and Patient First Maryland Physicians Group, P.C. (MD Physicians Group) maintain their principal places of business in Maryland.  Accordingly, Defendants now move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the parties do not meet the complete diversity requirement imposed by 28 U.S.C. § 1332.

**II. LEGAL STANDARD**

On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving that subject matter jurisdiction exists.  Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).  While plaintiffs have a burden to properly plead the jurisdictional facts, "the Court has the responsibility to explore the jurisdictional aspect of the case to ensure the case is properly before it."  McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936).  In determining

2

whether subject matter jurisdiction exists, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Evans, 166 F.3d at 647 (quoting Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991)).  A federal court is obliged to dismiss a case in its entirety upon finding that it lacks subject matter jurisdiction.  See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999).

### III. DISCUSSION

Title 28 of the United States Code provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between - (1) citizens of different States."  28 U.S.C. § 1332(a)(1).  Section 1332 requires complete diversity "such that the state of citizenship of each plaintiff must be different from that of each defendant."  Athena Automotive, Inc. v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999).  For jurisdictional purposes, a corporation is deemed to be a citizen of both the state in which it is incorporated and the state in which it has its principal place of business.  28 U.S.C. § 1332(c)(1)).  It is undisputed that the four defendants are incorporated in Virginia.  The question of whether complete diversity exists, then, turns on whether any of the four defendant corporations has its principal place of business in

Maryland.

The Fourth Circuit has approved two tests for determining a corporation's principal place of business for jurisdictional purposes, but has endorsed neither test to the exclusion of the other. Athena, 166 F.3d at 290 (citing Peterson v. Cooley, 142 F.3d 181, 184 (4th Cir. 1998)). The "place of operations" test is appropriately employed when a corporation has "multiple centers of manufacturing, purchasing, or sales," and focuses on "the place where the bulk of corporate activity takes place." Peterson, 142 F.3d at 184 (quoting Mullins v. Beatrice Pocahontas Co., 489 F.2d 260, 262 (4th Cir. 1974)). In contrast, the "nerve center" test applies "when a corporation engages primarily in the ownership and management of geographically diverse investment assets," Athena, 166 F.3d at 290, and focuses on the "place where the corporation's officers direct, control, and coordinate its activities." Peterson, 142 F.3d at 184 (quoting Mullins, 489 F.2d at 262).

The parties in the instant case are in dispute as to which test should be applied. Defendants argue that the Court should apply the "place of operations" test because Patient First MD and MD Physicians Group clearly perform "physical operations by which a corporation's presence in different states can be measured." See Peterson, 142 F.3d at 184. Defendants contend that application of this test will result in a determination that Patient First MD and MD Physicians Group maintain their principal places of business in Maryland. Plaintiffs, relying on Sea Marsh

Group, Inc. v. SC Ventures, Inc., 111 F.3d 129 (4th Cir. 1997), argue that the Court should apply a test that incorporates elements of both the "place of operations" test and the "nerve center" test to ensure that any jurisdictional determination is consonant with the corporate reality that Patient First Corporation maintains executive and operational control of Patient First MD and MD Physicians Group.[1]  Plaintiffs argue that application of this hybrid test leads to the conclusion that both Patient First MD and MD Physicians Group maintain their principal places of business where Patient First Corporation maintains its principal place of business, i.e., in Virginia.

The Court notes that the Fourth Circuit in Sea Marsh did not actually use both tests in concert with one another, but instead demonstrated that the defendant corporation's principal place of business was the same under both the "nerve center" test and the "place of operations" test.  Furthermore, it is well-settled law that the Fourth Circuit has approved two separate tests - each with its own purpose - to determine principal place of business. See, e.g., Mullins, 489 F.2d at 260; Peterson, 142 F.3d at 184; Athena, 166 F.3d at 290; Long v. Silver, 248 F.3d 309, 314 (4th Cir. 2001).  The pertinent query in the instant case, then, becomes: which of the two tests to apply?  Unlike Sea Marsh where each test yielded the same result, the facts of the instant case lend themselves to two different jurisdictional outcomes

---

[1] It is undisputed that Patient First Corporation maintains its principal place of business in Virginia.

depending upon which test is applied.

Under the "place of operations" test, the analysis focuses on where a defendant performs its corporate mission. Peterson, 142 F.3d at 184. Under this test, "a corporation is a citizen of the state where most of its work, land, buildings, inventory, employees, equipment and machinery are located." Caperton v. Beatrice Pocahontas Coal Co., 420 F. Supp. 445, 450 (W.D. Va. 1976) (quoting Riggs v. Island Creek Coal Co., 387 F. Supp. 1363, 1365 (S.D. Ohio 1974)), aff'd 585 F.2d 683 (4th Cir. 1978). In the instant case, Patient First MD manages five health care facilities in Maryland, while MD Physicians Group employs the health care providers who staff those facilities.[2] Because both Patient First MD and MD Physicians Group perform measurable activities solely within Maryland, "the locus of the day-to-day business operations," application of the "place of operations" test would lead to the conclusion that these two defendants maintain their principal places of business in Maryland, thus, destroying complete diversity. See West v. Cracker Barrel Old Country Store, No. 06-0400, 2006 WL 1329960 at *2 (D. Md. May 15,

---

[2] Defendants' Motion states that Patient First MD and MD Physicians Group operate six facilities in Maryland. Defs.' Mot. 9. Defendants' Reply Brief states that the two defendants operate only four facilities in Maryland. Defs.' Reply 3. Meanwhile, Dale Austin's Affidavit lists five Patient First facilities in Maryland: Owings Mills, Bel Air, Green Spring Station, Laurel, and Perry Hall. Defs.' Ex. 8: ¶3. In deciding Defendants' motion to dismiss, the Court will assume that Patient First MD and MD Physicians Group operate the five facilities explicitly set forth in the Austin Affidavit.

6

2006) (citing <u>Peterson</u>, 142 F.3d at 184-85).

Under the "nerve center" test, courts normally locate a corporation's principal place of business "where the activities of the corporation are controlled and directed," <u>Peterson</u>, 142 F.3d at 185 (quoting <u>Topp v. CompAir, Inc.</u>, 814 F.2d 830, 834 (1st Cir. 1987)), or "where its executive headquarters are located." <u>Id.</u> (quoting <u>Metropolitan Life Ins. Co. v. Estate of Cammon</u>, 929 F.2d 1220, 1223 (7th Cir. 1991)). In the instant case, it is readily apparent that the operating control of Patient First MD and MD Physicians Group occurs in Virginia, where all of the officers and directors reside, and where both defendants identify their principal offices. Pls.' Ex. 4, 6. While Patient First MD and MD Physicians Group manage and staff health care facilities in Maryland, Patient First Corporation clearly controls and formulates major policy and operational decisions for both subsidiary companies from its executive headquarters in Virginia and is substantially involved in the measurable business operations of the Patient First locations in Maryland. <u>See</u> <u>id.</u> Application of the "nerve center" test would result in a finding that these two defendants maintain their principal places of business in Virginia and that complete diversity, therefore, exists between the parties.

In <u>Peterson</u>, the Fourth Circuit concluded that application of the "nerve center test," rather than the "place of operations test," was appropriate where the corporation at issue was

7

essentially a passive investment vehicle set up to purchase another company's commercial promissory notes.  142 F.3d 181. The Fourth Circuit considered the business activity of the corporation - "whether it [was] active or passive and whether it [was] labor-intensive or management-demanding" - and found that the corporation's only operations were managerial in nature and controlled from its state of incorporation.  Id. (quoting J.A. Olson Co. v. City of Winona, 818 F.2d 401, 411 (5th Cir. 1987)). Because the corporation could readily transfer its investment assets, a jurisdictional test focusing on the location of operations made little sense.  See id. at 184.  Conversely, the Fourth Circuit in West concluded that the citizenship of the defendant corporation was more appropriately determined under the "place of operations" test because that corporation "was not akin to a holding company or other passive investment vehicle." West, at *1 (citing Peterson, 142 F.3d at 184; Maggio-Onorato & Assoc. v. Aegon N.V., 104 F. Supp. 2d 518, 520 (D. Md. 2000)).  In that case, the corporate activities of the defendant were controlled and directed from its executive offices in one state while it performed measurable business operations in other states.

The instant case is distinguishable from Peterson because, unlike the corporation at issue in that case, neither Patient First MD nor MD Physicians Group is a mere passive investment vehicle, readily capable of transferring its assets.  Application of the "place of operations" test is appropriate in this case, as

it was in West, because Patient First MD and MD Physicians Group both perform the type of "physical operations by which a corporation's presence in [a] different state[] can be measured."[3] Peterson, 142 F.3d at 184.  Under the "place of operations" test, the Court finds that Patient First MD and MD Physicians Group maintain their principal places of business in Maryland, as "the place where the bulk of corporate activity takes place."  Peterson, 142 F.3d at 184.  Consequently, because Patient First MD and MD Physicians Group are citizens of Maryland (in addition to Virginia), complete diversity does not exist between the parties as required by 28 U.S.C. § 1332.  Accordingly, the Court is obliged to dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

To avoid this result, Plaintiffs make the additional argument that because of the "incestuous relationship" between the four defendant corporations, their corporate veils should be pierced for the purpose of determining jurisdiction.  In order to find support for that theory, Plaintiffs request limited

---

[3] Some courts have noted that the "place of operations" test, with limited exceptions, is most consistent with the legislative intent behind the complete diversity requirement, stating that "when possible, courts should typically look to where 'the corporation would be most visible, would have the most contact with the public, and would consider its home.'  In that location, the corporation is less likely to face local prejudice as an outsider." Columbia Gas Transmission Corp. v. Burdette Realty Improvement, Inc., 102 F. Supp. 2d 673, 676 (S.D. W. Va. 2000) (quoting AFA Enters., Inc. v. American States Ins. Co., 842 F. Supp. 902, 908 (S.D. W. Va. 1994)).

discovery, Pls.' Opp'n. 8, which they believe will show that the defendant corporations do not maintain a formal separation among themselves.

While discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted, see Fed. R. Civ. P. 26(b)(1), "the decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court."  Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 216 n.3 (4th Cir. 2002).  In Base Metal, the plaintiff contended that the district court abused its discretion by failing to permit jurisdictional discovery.  The Fourth Circuit, however, saw no reason to overturn the district court's exercise of discretion where the plaintiff "simply want[ed] to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction." Id.

In the instant case, Plaintiffs seek to engage in a similar "fishing expedition," offering mere speculation about Defendants' failure to maintain a formal corporate separation,[4] but

---

[4] The Chief Financial Officer of Patient First Corporation submitted an affidavit, Defs.' Ex. 7, on behalf of Patient First MD and MD Physicians Group, stating that he possesses "first-hand knowledge" of the corporations' activities.  Plaintiffs suggest that this statement implies that he also performs financial services for Patient First MD and MD Physicians Group.  Pls.' Opp'n. 7.  In addition, Plaintiffs suggest that Defendants are simply playing a game of "corporate musical chairs" by switching job titles with each other among the various corporations.  Id. 6.  Plaintiffs point to the fact that three corporate officers - Morison, Gorse, and Sowers - occupy positions at Patient First

10

nonetheless concluding that discovery will likely confirm their suspicions.  While there is without question a significant interrelationship between the defendant corporations, "the separate place of business of [a] subsidiary is recognized in determining jurisdiction," even when it appears that "the corporate separation between [the] parent and [the] subsidiary is merely formal" and "the parent corporation exerts a high degree of control through ownership or exercise."  See Caperton v. Pocahontas, 420 F. Supp. 445, 450-51 (W.D. Va. 1976) (quoting Lurie Co. v. Loew's San Francisco Hotel Corp., 315 F. Supp. 405, 410 (N.D. Cal. 1970)), aff'd, 585 F.2d 683 (4th Cir. 1978)).  Because Plaintiffs' claim that the defendant corporations are not formally separate is attenuated and unsupported, the Court will deny the request for jurisdictional discovery.  See Carefirst Of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 403 (4th Cir. 2003) (citing Rich v. KIS Cal., Inc., 121 F.R.D. 254, 259 (M.D. N.C. 1988)).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be granted.  A separate order will issue.

/s/
_____
William M. Nickerson
Senior United States District Judge

---

Corporation, Pls.' Ex. 3, Patient First MD, Pls.' Ex. 5, and MD Physicians Group, Pls.' Ex. 7.

Dated: August 9, 2006